We'll hear argument now in the case of Strickland v. Dart. Mr. Hosseini. Good morning, Your Honor. May it please the Court, my name is Arvin Hosseini and I represent Michelle Strickland, the appellant. We're here because of a deeply concerning and pervasive issue within the Cook County Sheriff's Department. And while one man, Sheriff Sandifer, is at the center of this case, his actions directly enabled and fostered discriminatory behavior in his ranks. And his actions were further enabled by the systemic indifference of the Sheriff's Office towards workplace hostility. Now we're asking this Court to reverse the decision of the District Court who made two errors. First, by missing the forest for the trees, thus missing the pervasiveness of the hostility, of which Sandifer is the central actor. And second, by not considering the employer's liability in their negligent discovery of harassment. So turning to my first point, the pervasiveness of the harassment. The District Court erred by doing exactly what this Court has repeatedly said not to do. In the Mason decision, this Court said that incidents should not be carved up and evaluated individually. And so if we look at the totality of the circumstances, a clear pattern of racially charged and sexually charged behavior throughout the transportation unit emerges. Now, today we only have time to go through a few of those, so I'd like to start with the roll call incident, where other officers egged Sandifer on to use the N-word. And so he did. Several times. Now, Sandifer later admits that he used this word for shock value, and that he knew that it was totally unacceptable. And yet, he justified its use by saying, and I quote, if other officers use the N-word, then it belongs to everybody. That's from page 95 of his second deposition. And if that's not an admission of pervasiveness, then I don't know what is. Now, time and time again, this Court has emphasized the extreme severity of this word. In Bailey. Was plaintiff present for that? Plaintiff was not present for that particular incident, Your Honor. However, this Court has stated in Johnson that evidence of the same supervisors made racially derogatory comments to other employees in the same position. I don't know if that's relevant. I just didn't. Of course. Now, time and time again, this Court has ruled on the severity of that word. Now, if you put this into context with the Brother incident, which the appellees make light of, on the basis that, well, Sandefur didn't call Strickland the N-word. But of course, we know from the Pascal decision that this makes no difference to the listener, given the historical context. In fact, I believe this Court referred to that word as pure anathema. Now, turning to sexism, there's the Jacket incident, where Sergeant Sandefur told Officer Voitas to take charge, show her who the man is, and take the jacket. Now, appellees will tell you this is a joke. But that's not a joke. This is a sergeant, yet again, taking a benign interaction and turning it into an opportunity to divide a subordinate and have another subordinate assert dominance on his female coworker by force. Now, every other one of these 20 instances that I wish we could go into paint this broader pattern of sexually charged discriminatory behavior that Sandefur admits in his deposition is pervasive in the Sheriff's Office. Now, the appellees will want this Court to evaluate each incident separately under a microscope in hopes that this clear and pervasive pattern will be missed. And so I'd like to urge this Court to step back and see the whole forest and not just the trees. Now, turning to the question of employer liability, the Sheriff's Office used their policy as an excuse to stick their heads in the sand and ignore well-known discrimination. I believe the appellees will come up here and tell you all about the Lambert decision, but they probably won't tell you about this Court's decision just last year in EEOC v. Village, reiterating, and I quote, that an employee need not specifically comply with the company's internal procedure so long as the employer is adequately put on notice. That decision goes on to reiterate the Parkins decision. By reporting harassment to the point person, an employee satisfies the notice requirement. And as luck would have it, the Office of Professional Review, the point person within the Sheriff's Department, was put on notice when they received an EEOC charge, but they brushed it off. They conducted a sham investigation, only interviewed Strickland, and then determined that, you know what, everything is fine. Now, that's curious because seven months later, once she filed their proper complaint form that they wanted, they finally acted. Now, it's worth noting that this OPR complaint substantively was identical to that complaint. Before this, it's also worth noting that Strickland had told two lieutenants who were directly above Sandifer about the behavior. The first one discouraged her from making a report, which alone is a basis of negligence recognized. That was about the stupidness comment? I'm referring specifically to her statements to Lieutenant Ledesma, who then discouraged her from reporting. What exactly did she report to him? What does the evidence show? I apologize, Your Honor. I believe it shows this was about the no time for stupidness comment in November of 2018. Yes, sir. Is that right? Yes, sir. I believe that's correct. That's the only one, right? I believe there were more than just that, but I apologize. I might be getting them. We're getting into the trees. Yes, but the point that I'm trying to make here is that this is a place where... What she talked with him about was very little of the larger case. What about Lieutenant Martin? Lieutenant Martin... Who told her, file the OPR report. Yeah. On four or five different occasions, he refused to lift a finger, despite later admitting that he could have brought this matter up the ladder himself. What this is showing us is that their internal policy isn't doing anything to enable the Sheriff's Office to investigate harassment claims as required under Farragher. Rather, it's giving them an excuse to hide behind and creating additional hoops for victim of harassment to have to jump through. Let me throw a view of this case and invite your response. This plaintiff did not suffer any tangible employment circumstances in the language of hostile environment cases, right? Tangible in terms of physical... She was not denied a promotion or a raise? She wasn't disciplined or demoted? No, Your Honor. Okay. She took her concerns to Lieutenant Martin, who told her to use formal complaint process.  And then when she did, Sandifer was very quickly transferred to... And at least as near as I can tell, the racially charged language, or at least the worst of it, ended as far as her experience goes. And fairly soon after that, she left the office, right? Correct. So that sounds, from one point of view, like a policy that works. Your Honor, I see that I'm almost out of time. I might run over, but to answer your question, that doesn't prove that the policy works. That just proves that they finally chose to act once Strickland jumps through the hoops that they asked her to jump through. Keep in mind, the Office of Professional Review knew about this situation. They acknowledged the situation by interviewing only Strickland, and they did nothing for seven months. Your Honor, I see that I'm out of time. If there are no more questions, I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honor. Nazia Hassan, arguing on behalf of the appellees. We respectfully ask that this court affirm the district court's grant of summary judgment for two reasons. First, there can be no basis for employer liability based on this record. Second, there was no hostile work environment based on the undisputed facts. First, Ms. Strickland does not meaningfully dispute that Sgt. Sandifer was not her supervisor for Title VII purposes and has forfeited that issue on appeal. He had no authority to hire, fire, otherwise discipline her, and on that basis alone, this court can affirm the district court's ruling. As Your Honor pointed out, there was no meaningful alteration of Ms. Strickland's work. There was no difference in her employment. There's no tangible employment action. Correct, there's no tangible. The question is whether this was sufficiently severe or pervasive. Yes, but in order to be found severe or pervasive, there would have to be a tangible employment action. No. For a hostile work environment claim? No. No. That's the whole point. A hostile work environment claim does not require tangible employment action. I'm sorry, I'm misusing the term. I think it's alteration in the conditions. Of working conditions. Yes. Yes. I didn't mean to conflate the two. So there was no alteration of her work environment. As we discussed, the Sheriff's Office has a established process for submitting complaints about misconduct. Ms. Strickland was cautioned repeatedly by Lieutenant Martin to submit those complaints in writing, and she failed to do so. And later, when she did, in 2019, submit a complaint in writing to the Office of Professional Regulation, swift action was taken by the Sheriff's Office to remedy her complaints. So why shouldn't we treat the EEOC charge in July of 2018 as sufficient notice of at least a problem to the employer as of that time? Your Honor, it was treated as an investigated matter. The Sheriff's Office did interview Ms. Strickland about her concerns. Plaintiff is telling us they did nothing more. Is that right? I don't know from the record. I don't believe that the Sheriff's Office took any action to transfer Sandifer at that time. Did they talk to Sandifer? I believe that they would have talked to him, but I can't point to... It sounds like you're guessing. Yes. Let's not do that. Okay. Thanks. So the 2018 EEOC charge of discrimination is not a complaint that the Sheriff's Office would investigate in the traditional way that they investigate charges of misconduct at the Sheriff's Office. The Sheriff's Office superior staff, who Ms. Strickland made a complaint to, could not do anything additional without her statements in writing about what occurred and what she was actually complaining about. I'm confused. Was there some kind of official policy in place that limited an investigation of an EEOC charge? No, Your Honor. There is no such policy. Okay. I understand that might draw a somewhat more defensive response from a bureaucracy than an OPR complaint aimed at a particular individual or group of leaders, but I'm having trouble understanding why that charge was not at least sufficient notice to put the employer on notice for potential liability for actions after that. Your Honor, it may have been, but as we turn to the second argument, the conduct was not severe or pervasive. Well, that argument is a lot easier if you're limited to talking about things that occurred after the Sheriff's Office got the EEOC report because there wasn't much. Correct. There wasn't much. Some of the worst stuff that we all have read about came earlier, right? Yes. So although appellant asked the court to not look at each instance individually, in this situation you have to. Many of the comments that are complained about have no tangential reference to race or gender. They're more of a complaint about an unpleasant workplace, which Title VII does not protect an employee from. It's not a civility code, as this court has held repeatedly. Ms. Strickland complained about conduct that the rest of the Sheriff's Office was also subject to. There was no indication. Judge Hamilton mentioned the no time for stupidness. There's no reference to race or gender in that comment whatsoever. And in fact, when Lieutenant Ledesma told her, don't worry about it, I'll take care of it, he did. He put her back in the rotation, which is the issue that she was complaining about. There's no basis for the Sheriff's Office to be held liable for this conduct. And there's no basis for Section 1983 liability against Sgt. Sandifer for the same conduct. There was no severe conduct or pervasive conduct. This is a smattering of complaints. What do we make of Sandifer's comment that his brother was the worst in I know, directly to plaintiff? I'm not sure what it means, but it's surely pretty offensive. I'm not here to defend Sgt. Sandifer's comment. It is certainly offensive, bizarre, as the district court put it. But it's not rising to the level of severe or pervasive conduct in this context. The one time incident that's not directed at Ms. Strickland. It's not referencing her or her race or her gender. Oh, that's an interesting spin on it. What I mean, Your Honor, is he was not using that racial epithet directed at her. It was a conversation with her, yes. But the conduct was never physically harassing or threatening or abusive, which is also part of the analysis that this court must use. We ask that this court affirm the district court's ruling on summary judgment, unless this court has any further questions. Thank you, counsel. Thank you. Mr. Hossaini, anything further? Yes, sir. I'd first like to address the comments about how there was no alteration to her workplace. But how could there not be? Officer Strickland works at a correctional facility, a inherently dangerous job where she has to depend on her fellow officers. Sandifer himself puts it, we're all blue. And yet, Sandifer is going through and dividing her and diminishing her for being a woman, dividing her and diminishing her for being black. And she has to walk into that kind of a workplace, constantly being reminded that despite the fact that she's an equal rank with others around her, that she is, in fact, lower. Now, this court has constantly referenced the severe impact of that particular word, Bailey, McGinnis, Hrabowski, over and over again. Now, when it comes to the facially neutral language, there's a lot of statements, a lot of incidences that I'm hearing that appellees are trying to diminish them and treat them like they're nothing because they're facially neutral. But this court has recognized, particularly under Dandy versus UPS, that context matters. Further, the Supreme Court ruled that historical context in particular matters. So when we're talking about phrases like boy, girl, you people, facially, they may be neutral. But in reality, the historical context comes in and it colors everything else that's here. That's why we're urging the forest for the trees. Finally, what I want to hit on here is that comment that the jacket incident was apparently not threatening. When you are commanding an officer below you to take something from somebody else by force because they are a woman, I don't think that stands up to scrutiny. There are no further questions. I yield the remainder of my time. Thank you very much. Thank you, counsel. The case is taken under advisement.